UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RACHEL GRAYLESS,

        Plaintiff,

v.

ALLSTATE INSURANCE COMPANY,

        Defendant.

CASE NO. 3:21-CV-5492-DWC

ORDER ON PARTIAL MOTION FOR SUMMARY JUDGMENT AND MISCELLANEOUS MOTIONS

This matter comes before the Court on Defendant Allstate Insurance Company's Motion for Partial Summary Judgment Re Bad Faith and IFCA Claims (Dkt. 38), Motion to Bifurcate Trial of Contractual from Alleged Bad Faith Claims (Dkt. 42), and Motion for Protective Order (Dkt. 55).[1] Plaintiff Rachel Grayless has also filed a Motion to Seal (Dkt. 48). Having considered the parties' briefing and the relevant record, the Partial Motion for Summary Judgment (Dkt. 38) is granted. Grayless's bad faith and IFCA claims are dismissed with prejudice. As the bad faith

---

[1] Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. Dkt. 8.

claims are dismissed, the Motion to Bifurcate (Dkt. 42) is denied as moot. The Motion to Seal and the Motion for a Protective Order (Dkts. 48, 55) are granted as follows: the documents filed at Docket Entry 50 are to remain sealed at this time.

### I. Background

In the Complaint, Grayless alleges that she was injured in a motor vehicle accident on December 5, 2018 ("the accident"). Dkt. 1-1. On the date of the accident, Grayless was insured by Allstate and her policy included underinsured motorist coverage ("UIM"). *Id*. at ¶ 2.6. After receiving policy limits from the at-fault driver ("tortfeasor"), Grayless made a claim to Allstate for payment within her UIM policy limits. *Id*. at ¶ 2.9. Grayless contends Allstate unreasonably refused to compensate her for the damages she sustained in the accident. *Id.* at ¶ 2.10. As a result, Grayless alleges Allstate is liable under theories of breach of contract and bad faith. *Id*. at ¶¶ 3.1 – 4.1. She also alleges Allstate violated Washington's Insurance Fair Conduct Act ("IFCA"). *Id*. at ¶ 5.1.

### II. Oral Argument

In both the Partial Motion for Summary Judgment and the Motion to Bifurcate, Allstate requested oral argument. Dkt. 38 (motion caption); Dkt. 55 (motion caption). The Court has considered the record and finds the matters before the Court can be resolved on the record without oral argument. Therefore, the requests for oral argument are denied.

### III. Discussion

A. <u>Motion for Summary Judgment</u>

Allstate filed the Partial Motion for Summary Judgment on June 1, 2022, seeking dismissal of Grayless's bad faith and IFCA claims. Dkts. 38, 39-41 (supporting evidence).

Grayless filed her Response on June 27, 2022. Dkts. 44, 45-47, 50 (supporting evidence). On July 1, 2022, Allstate filed its Reply. Dkts. 51, 52-54 (supporting evidence).

1. *Standard of Review*

Summary judgment is proper only if the pleadings, discovery, and disclosure materials on file, and any affidavits, show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

2. *Evidence*

The record shows the vehicle Grayless was driving was rear-ended by another vehicle on December 5, 2018. *See* Dkt. 54, p. 5.[2] As Grayless was approaching a stoplight, the light turned green, but the traffic had not started to move. *Id*. Grayless's vehicle was struck from behind by a

---

[2] The Court notes the parties do not cite to clear evidence outlining the details of the accident. *See* Dkts. 38, 44. As the facts surrounding the accident do not appear to be in dispute, the Court cites to an expert report's summary of the accident. *See* Dkt. 54.

vehicle traveling at 20 to 25 miles per hour. *Id*. At the time of the accident, Grayless was eight months pregnant. Dkt. 46, Grayless Dec., ¶ 2. She went to Providence St. Peter Hospital the day after the accident due to concerns for the health of her unborn child and back pain. *Id*. at ¶ 3.

Grayless began chiropractic care in early January 2019. Dkt. 46, Grayless Dec., ¶ 4. She then gave birth on January 9, 2019, via cesarean section. Dkt. 46, Grayless Dec., ¶ 5.[3] Grayless continued to receive chiropractic treatment and was on maternity leave. *Id*. at ¶ 6. Then, on March 26, 2019, Plaintiff had gallbladder surgery and was given six weeks of Family Medical Leave Act ("FMLA") leave. *Id*. at ¶ 7. Following the delivery and gallbladder removal, Grayless continued to receive chiropractic treatment. *See id*. at ¶¶ 7-8. She began physical therapy in May of 2019. *Id*. at ¶ 8. In September of 2019, she started osteopathic treatment with Dr. Deepti Paturi, D.O. *Id*. at ¶ 9. Grayless continued receiving medical treatment for her accident-related injuries through April 3, 2020; at that time, her Personal Injury Protection ("PIP") benefits were exhausted and the COVID-19 pandemic began. *Id*. at ¶ 10.

Grayless states she provided documentation supporting her claim that her accident-related injury prevented her from working fulltime. *Id*. at ¶ 11. She had a work restriction of 20 hours per week from May 8, 2019 – August 30, 2019 and 30 hours per week from September 3, 2019 – October 2021 due to low back and neck pain caused by the accident. *Id*. Grayless did not request lost wages for the time she was out on maternity and FMLA leave (January – April 2019). *Id*. at ¶ 12. Her wage loss claim, therefore, did not begin until May 2019. *Id*.

On December 8, 2020, David Bamford, a claims representative for Allstate, was assigned the UIM claim arising from the accident. Dkt. 40, Bamford Dec., ¶¶ 1, 4. On April 13, 2021,

---

[3] The evidence shows Grayless underwent a cesarean section delivery due to the baby's positioning. Dkt. 46, Grayless Dec., ¶ 5. There does not appear to be any evidence Grayless experienced delivery complications because of the accident. *See e.g.,* Dkt. 41, Hight Dec., ¶ 16 (noting the unborn child was not injured).

Grayless made a UIM claim for the accident. *Id*. at ¶ 5. Two days later, on April 15, 2021, Bamford contacted Tiffany Owens, in-house legal counsel for Allstate, and requested information regarding Grayless's medical records related to her childbirth and gallbladder surgery. *Id*. at ¶ 6. Bamford also contacted Robert Wilke, Grayless's counsel; he requested information regarding Grayless's medical records and an update on the status of the lawsuit between Grayless and the tortfeasor. *Id*. Bamford received the requested records and "all other pertinent records for review." *Id*. at ¶ 7. He also requested a medical records review from MES Solutions, an independent company, because there were gaps in Grayless's treatment for accident-related injuries. *Id*.; Dkt. 53, Bamford Dec., ¶ 8. MES Solutions selected and arranged for Dr. Lee Robertson to perform a records review. *Id.*; Dkt. 40, Bamford Dec., ¶ 8.

Dr. Robertson did not examine Grayless; rather, he reviewed Grayless's medical records, which included Grayless's medical providers' assessments of her ability to work. *See* Dkt. 40-1, 2; *see also* Dkt. 53, Bamford Dec.; Dkt. 53-5.[4] On April 29, 2021, Dr. Robertson authored a report stating that he determined Grayless's diagnoses of cervical spine osteoarthritis and lumbar spine degenerative disc disease were supported by the objective evidence found on imaging studies. Dkt. 40-1, p. 4. Dr. Robertson opined that Grayless's lumbar strain was caused by the accident, but the cervical spine osteoarthritis was pre-existing. *Id.* at p. 5. He opined that

---

[4] The treatment notes contained information about work restriction paperwork and the medical providers' assessments on Grayless's work status and restrictions. *See e.g.,* Dkt. 53-5, pp. 86-90 (Grayless requested two more weeks at reduced work schedule of 20 hours per week in August 2019 and requested to go to 30 hours per week after; Dr. Ronning completed the forms and instructed Grayless to return when she was ready to go back to work fulltime); p. 93 (Dr. Paturi's treatment notes from September 2019 stating Grayless was working 20 hours per week and was going to try 30 hours per week); pp. 101, 105, 107 (Dr. Paturi's October 2019 treatment notes indicating Grayless is working 30 hours per week and Dr. Paturi was agreeable to completing paperwork allowing Grayless to work for 30 hours per week for two additional months); p. 112 (December 2019, Dr. Paturi found Grayless could continue with a 30 hour work week, was unsure when Grayless would be able to work 40 hours per week but would complete paperwork for work and assess at each visit); p. 189 (in June 2019, Dr. Woods stated she filled out the request for continued work restrictions to be extended for one month); p. 193 (in August 2019, Dr. Woods stated work restriction paperwork was completed, limited Grayless to 4 days per week for 5 hours per day).

Grayless had no restrictions on returning to work. *Id*. at p. 7. Dr. Robertson found conservative treatment that occurred within 90 days of the accident was deemed related to the accident. *Id*. at p. 5. He opined that any treatment past 90 days from the date of the accident was not appropriate. *Id*.

Bamford did not request wage information from Grayless's employer because most of the wage loss claim occurred outside the time period Dr. Robertson found was related to the accident. Dkt. 45, pp. 118-19. However, Bamford received information about Grayless's lost wages. Dkt. 53, Bamford Dec., ¶ 3; *see* Dkt. 53-1 (claim file notation indicating Bamford reviewed wage loss information provided by "Stephanie"); Dkt. 45, Wilke Dec., ¶¶ 2-4 (medical work restrictions provided in UIM Demand).

Bamford "considered all the existing information in regard to Plaintiff's treatment as well as Dr. Robertson's opinions with respect to assessing claim value." Dkt. 40, Bamford Dec., ¶ 8. He also evaluated the nature of the accident and the property damage to Grayless's vehicle. *Id*. Bamford states that he did not ignore any records or opinions of any medical doctors. Dkt. 53, Bamford Dec., ¶ 9. If Bamford received a document, he reviewed it. Dkt. 45, p. 125.

At the time of the accident, Grayless had UIM coverage of $100,000/$300,000 and PIP benefits of $10,000. Dkt. 40, Bamford Dec., ¶ 3. The available bodily injury coverage from the tortfeasor was $50,000/$100,000 and Grayless received policy limits of $50,000 to resolve her claim against the tortfeasor. *Id.*; *see also* Dkt. 47, Dietz Dec., ¶ 33.

On May 12, 2021, Bamford determined Grayless had been fully compensated when she received $50,000 from the tortfeasor's insurer. Dkt. 40, Bamford Dec., ¶ 9. In assigning the claim value, Bamford considered all Plaintiff's medical records and Dr. Robertson's records review. *Id*. at ¶ 10. Bamford determined $10,615 was an appropriate evaluation for Grayless's

medical specials and $5,800 for wage loss, which were both addressed by PIP. *Id*. at ¶ 11.[5] He valued Grayless's non-economic damages at $25,000 due to her physical injuries. *Id*.

Allstate's expert, William Hight, states Allstate's claim file documents the scope of the investigation, the retention of an expert medical specialist to review and evaluate Grayless's treatment, and Allstate's responsive communications to Grayless's counsel. Dkt. 41, Hight Dec, ¶ 19. Hight opines "that Allstate acted with due care and reasonable justification in its handling of the Grayless claim." *Id*. at ¶ 20. In his opinion, Allstate's "investigation, evaluation and communications, both in substance and in timeliness, were fair, reasonable and in conformance with industry custom and practice." *Id*. at ¶ 22.

Grayless's expert, Robert Dietz, opines that "the claims handling practices evidenced in this case are a gross departure from accepted reasonable industry standards." Dkt. 47, Dietz Dec. at ¶ 40. He asserts Allstate acted in an unreasonable manner when it ignored all the evidence that supported the claim and defaulted to its hired records review. *Id*. However, Dietz also admits that he does not know if Bamford ignored, gave no consideration to, did not read, did not assess, or failed to evaluate all the medical evidence in this case. Dkt. 39-1, pp. 6-7.

3. *Bad Faith*

Allstate asserts Grayless's bad faith claim should be dismissed. Dkt. 38, p. 5. An insurer has a duty of good faith to its policyholder and violation of that duty may give rise to a tort action for bad faith. *Truck Ins. Exch. v. Vanport Homes, Inc.,* 147 Wash.2d 751, 765 (2002). Claims by insureds against their insurers for bad faith are analyzed applying the same principles as any other tort: duty, breach of that duty, and damages proximately caused by any breach of

---

[5] It is unclear from the record how Allstate calculated the $5,800 wage loss amount addressed by PIP. Bamford stated he has not handled PIP claims and does not know "how they decide or handle those things." Dkt. 45, p. 111.

duty. *See Safeco Ins. Co. v. Butler*, 118 Wash.2d 383, 388 (1992). A policyholder asserting bad faith bears a heavy burden, and such a claim is not easy to establish. *Overton v. Consolidated Ins. Co.*, 145 Wash.2d 417, 433 (2002). The insured must show that the insurer's breach of the insurance contract was "unreasonable, frivolous, or unfounded." *Id.* The insurer must have "no reasonable justification" for its evaluation of the claim. *Starczewski v. Unigard Ins. Grp.*, 61 Wash.App. 267, 810 P.2d 58, 62 (1991). An insurer acts in bad faith when it denies coverage based upon mere suspicion and conjecture, fails to conduct a good faith investigation of the facts before denying coverage, or denies coverage based on a supposed defense that a reasonable investigation would have proved to be meritless. *Industrial Indem. Co. of the Northwest, Inc. v. Kallevig,* 114 Wash.2d 907, 917 (1990). "The insured may present evidence that the insurer's alleged reasonable basis was not the actual basis for its action, or that other factors outweighed the alleged reasonable basis." *Smith v. Safeco Ins. Co.*, 150 Wash.2d 478, 78 P.3d 1274, 1278 (2003) (en banc).

  Grayless contends Allstate's conduct was unreasonable because Allstate (1) failed to investigate Grayless's wage loss claim and (2) discarded the diagnoses and opinions of Grayless's treating providers and favored the records review report because it benefited Allstate. Dkt. 44, p. 23.

  First, Grayless asserts Allstate's conduct was unreasonable because Allstate failed to investigate Grayless's wage loss claim. Dkt. 44. She maintains Bamford discounted her wage loss claim because there was a gap between the accident and the start of her wage loss claim. *See* Dkt. 44, p. 9. Grayless argues that, had Bamford requested information from her employer, the explanation for the gap would have been evident. *Id*. at pp. 9-10.

Grayless's claim file included wage loss information. Grayless's medical records contained medical opinions regarding Grayless's inability to work and Grayless's medical work restrictions were provided in the UIM Demand. Dkt. 45, Wilke Dec., ¶¶ 2-4; *see e.g.,* Dkt. 53-5, pp. 89-90, 93, 101, 105, 107, 112, 189, 193. Grayless also indicates a wage loss spreadsheet was provided to Allstate. Dkt. 45, Wilke Dec., ¶ 5; *see also* Dkt. 45, pp. 51-60, 124-25.[6] Further, the claim file includes a notation indicating Bamford reviewed wage loss information provided by "Stephanie." Dkt. 53-1. The record shows Bamford received wage loss documentation and reviewed it. Dkt. 45, p. 125; Dkt. 53, Bamford Dec., ¶ 3; Dkt. 50.[7]

During his deposition, Bamford noted a gap in Grayless's wage loss claim and later stated that his evaluation of the wage loss claim would potentially change if he were to learn Grayless segregated her time and was claiming wage loss from the time she returned from maternity leave. Dkt. 45, p. 133. However, when making his decision, Bamford was aware that Grayless missed time from work due to the delivery of her child and gallbladder surgery. Dkt. 53, Bamford Dec., ¶ 9. Bamford determined that lost wages for the day of work Grayless missed following the accident was related to the accident. Dkt. 45, pp. 135, 137. He found that any wage loss claim beyond this one day was unrelated to the accident and the one day of lost wages was addressed by the amount PIP already paid for a wage loss claim. *Id*. Bamford did not contact Grayless's employer to obtain wage loss information because he determined additional information was unnecessary; Grayless's wage loss claim was outside the 90-day period that was

---

[6] Grayless states Bamford did not consider the work restrictions sent to PIP or the wage loss spreadsheet, but does not cite to evidence that supports this assertion. *See* Dkt. 44, p. 5. During his deposition, Bamford said, if a wage loss spreadsheet was sent in the UIM Demand, he reviewed it. *Id*. at p. 125. Grayless also states she provided work restriction information in the UIM Demand. *See* Dkt. 45, Wilke Dec, ¶¶ 2-4.

[7] The Court notes Allstate's claim handling manual states only that verification of lost wages *can* be accompanied by written documentation from the injured party or her employer, phone verification with the employer, or a personal interview of the injured party. Dkt. 50, p. 43. As the record shows Bamford had wage loss information for the relevant period, Grayless has not shown Bamford was required to contact her employer.

deemed appropriate for treatment following the accident. *See* Dkt. 53-6; Dkt. 45, pp. 111, 118-19.[8]

The evidence shows Bamford understood Grayless missed work due to the delivery of her child and gallbladder surgery. Bamford considered all records that he received, which included wage loss records from Grayless, medical records regarding Grayless's work restrictions from May 2019 through October 2021, and Dr. Robertson's opinion that Grayless had no work restrictions. The record does not show Bamford's investigation into and evaluation of Grayless's wage loss claim was unreasonable. *See GCG Assocs. LP v. Am. Cas. Co. of Reading Pennsylvania*, 2008 WL 3542620, at *10 (W.D. Wash. Aug. 8, 2008) (granting summary judgment and finding the insurer is required to investigate claims in a reasonable manner before determining coverage, but is not required to undertake the most extensive investigation possible).

Second, Grayless contends Allstate's conduct was unreasonable because Allstate discarded the diagnoses and opinions of Grayless's treating providers and favored Dr. Robertson's report because it benefited Allstate. Dkt. 44, p. 23. The record reflects Allstate conducted a reasonable investigation. Bamford requested records from Allstate's in-house counsel and Grayless's counsel. Dkt. 40, Bamford Dec., ¶¶ 6-7. He also obtained an independent records review through MES Solutions, an independent company that independently selected Dr. Robertson to perform the records review. *See id.* at ¶ 8; Dkt. 40-1; Dkt. 53, Bamford Dec., ¶ 8. After considering the entire claim file, Bamford concluded that treatment up to 90 days from the

---

[8] Dr. Robertson found conservative treatment that occurred within 90 days of the accident, or until March 6, 2019, was deemed related to the accident. *See* Dkt. 40-1, 10. He opined that any treatment after March 6, 2019, beyond 90 days after the accident, was not appropriate. *Id.* Grayless states that she was unable to work full time due to accident-related injuries from May 2019 through October 2021. Dkt. 46, Grayless Dec., ¶ 11.

date of the accident was reasonable and that Grayless was fully compensated by the tortfeasor. *See* Dkt. 53-6

Bamford gave more weight to Dr. Robertson's opinion because it was a more global opinion that considered the entire claim file. Dkt. 45, p. 118. Moreover, records Grayless contends Bamford should have given more weight do not clearly state Grayless's work restrictions were a result of the accident. *See* Dkt. 45, pp. 16-36. For example, one of Grayless's treating physicians opined that Grayless had work restrictions due to the accident and two subsequent surgeries. *See* Dkt. 45, pp. 33-34, 36. And, several opinions regarding Grayless's work limitations do not state the underlying cause of her work restrictions (i.e., car accident, surgeries, etc.). *See e.g.*, *id.* at pp. 16, 18-22.

The evidence shows Bamford considered all the evidence in the claim file before evaluating the claim. Dkt. 40, Bamford Dec., ¶ 8; Dkt. 53, Bamford Dec. ¶ 9.[9] There is no indication, beyond Grayless's conclusory allegations, that Bamford was biased during the claim evaluation process or relied on Dr. Robertson's opinion simply because it was favorable to Allstate.[10] Thus, Grayless has not shown Bamford's evaluation of the evidence in the claim file was unreasonable.

---

[9] Grayless's expert, Dietz, makes unfounded conclusions that Allstate ignored objective evidence. Dkt. 47, p. 17. However, in his deposition, Dietz admitted that he does not know if Bamford ignored, gave no consideration to, did not read, did not assess, or failed to evaluate all the medical evidence in this case. Dkt. 39-1, pp. 6-7. Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 888–89 (1990). Therefore, the Court finds the unrefuted evidence shows Bamford considered all the evidence in the claim file.

[10] To the extent Grayless asserts that Allstate's conduct was unreasonable because Allstate used a favored vendor, the Court is not persuaded. If MES Solutions was a preferred vendor, Grayless has not shown why that is sufficient to prove unreasonableness. The record reflects that MES Solutions is an independent company. Dkt. 53, Bamford Dec., ¶ 8. MES Solutions, not Allstate, selected Dr. Robertson to complete the medical records review. *Id.* There is no evidence Allstate chose MES Solutions or Dr. Robertson because it would result in an opinion favorable to Allstate.

In sum, the record does not reflect bad faith. This is not a situation where the insurer unreasonably denied payment prior to *any* investigation while relying on mere suspicion or conjecture. *See e.g., McGee-Grant v. Am. Family Mut. Ins.*, No. C14-1989RSM, 2016 WL 126429, at *4 (W.D. Wash. Jan. 12, 2016) (finding bad faith investigation where insurer denied payment prior to reviewing medical records); *Scanlon v. Life Ins. Co. of N. Am.*, 670 F. Supp. 2d 1181, 1195-96 (W.D. Wash. 2009) (holding that insurer conducted a bad faith investigation where it denied the insured's claim by relying upon single doctor's two sentence memorandum, ignoring multiple medical professionals' conflicting conclusions, and failing to further investigate claim); *Aecon Bldgs., Inc. v. Zurich N. Am.*, 572 F. Supp. 2d 1227, 1236-38 (W.D. Wash. 2008) (holding that investigations were not conducted in good faith where insurers did not conduct any investigation and made assumptions without a factual basis before denying claim). Rather, Allstate conducted an investigation and had a factual basis and reasonable justification for the evaluation of Grayless's claim. The fact that Allstate did not resolve the claim in the manner requested by Grayless does not, alone, render Allstate's investigation and conduct unreasonable. The Court finds no reasonable jury could conclude Allstate's conduct regarding Grayless's claim was unreasonable, frivolous, or unfounded. Therefore, Grayless's bad faith claim fails.

    4. *Insurance Fair Conduct Act*

Allstate also seeks dismissal of Grayless's IFCA claim. Dkt. 38, p. 12. In the Complaint, Grayless alleges Allstate unreasonably denied her "claim for payment of benefits to compensate her for the damages she sustained in the motor vehicle accident." Dkt. 1-1, p. 5. Allstate asserts that Grayless's claim was never denied; rather, Grayless's claim was evaluated and the amount owed is disputed. Dkt. 38, p. 12.

IFCA provides that any "first party claimant to a policy of insurance who is unreasonably denied a claim for coverage or payment of benefits by an insurer may bring an action ... to recover the actual damages sustained." RCW 48.30.015(1). However, "IFCA does not create an independent cause of action for regulatory violations." *Perez-Crisantos v. State Farm Fire & Cas. Co.*, 187 Wash.3d 669, 684 (2017). An "insured must show that the insurer unreasonably denied a claim for coverage *or* that the insurer unreasonably denied payment of benefits." *Id.* at 683. A determination of whether an offer effectively denies an insured the benefits of the insurance policy should focus "primarily on what [the insurer] knew or should have known at the time the offer was made." *See Morella v. Safeco Ins. Co. of Ill.*, 2013 WL 1562032, at *3-4 (W.D. Wash. Apr. 12, 2013) ("Where an insurer pays or offers to pay a paltry amount that is not in line with the losses claimed, is not based on a reasoned evaluation of the facts ... and would not compensate the insured for the loss at issue, the benefits promised in the policy are effectively denied.").

Based on the Complaint, the only issue here is whether Allstate unreasonably denied payment of benefits. As stated above, the evidence shows Bamford considered the entire claim file related to Grayless's UIM claim. After the investigation was complete, Allstate valued Grayless's claim at $41,415.00. Dkt. 45, pp. 134-35; Dkt. 53-6. Grayless received $50,000.00 from the tortfeasor and Allstate concluded Grayless had, therefore, been fully compensated. *See* Dkt. 53-6. The evidence fails to show the investigation and review of the claim file was unreasonable. Grayless merely takes issue with Allstate's position that the value of her injury claim was less than the tortfeasor's underlying policy limits that were tendered to her.

Grayless makes assertions that Allstate should have given different weight to the evidence, contacted Grayless's medical providers, or provided different evidence to Dr.

1  Robertson. Dkt. 44. However, Grayless has not shown Allstate's investigation was unreasonable.
2  *See Hanson v. State Farm Mut. Auto. Ins. Co.*, 261 F. Supp. 3d 1110, 1117 (W.D. Wash. 2017)
3  (finding the insurer was not required to contact medical providers and consider every possible
4  medical opinion to have conducted a reasonable investigation). Rather, the record shows
5  Bamford obtained records and a reviewing medical opinion and, after completing the
6  investigation, made a valuation determination. The parties disagree about the amount of
7  damages.

8  "A mere disagreement about the amount of damages based on available evidence cannot
9  ground a claim for failure to investigate." *Aspin v. Allstate Prop. & Cas. Co.*, 2020 WL 3000514,
10 at *3 (W.D. Wash. June 4, 2020) (internal quotations omitted). Grayless has not identified
11 evidence supporting an unreasonable denial of payment of benefits beyond Allstate's
12 disagreement with the valuation of Grayless's claim. Grayless has also failed to provide
13 sufficient evidence to overcome Allstate's showing that Bamford considered all records in the
14 claim file. Therefore, Grayless's IFCA claim fails. *See Garrison v. Allstate Insurance Co.*, 2022
15 WL 1061916 (W.D. Wash. April 8, 2022) (granting summary judgment where the plaintiff only
16 showed a disagreement over valuation); *Jelinek v. Am. Nat'l Prop. & Cas. Co.*, 747 F. App'x
17 513, 515 (9th Cir. 2018) ("A delay in payment due to a good-faith dispute over the value of
18 a claim does not amount to a denial of benefits under IFCA."); *Aspin*, 2020 WL 3000514 at *3
19 (finding no IFCA claim where the plaintiff failed to offer evidence showing Allstate's
20 investigation was unreasonable or that it ignored evidence the insured provided when valuing the
21 claimed losses).

22

23

24

5. *Conclusion*

Based on the record before the Court, no reasonable jury could conclude Allstate's conduct constituted bad faith or violated IFCA. Therefore, Allstate's Partial Motion for Summary Judgment (Dkt. 28) is granted.

B. <u>Motion to Bifurcate</u>

Allstate filed a Motion to Bifurcate Trial of Contractual from Alleged Bad Faith Claims on June 22, 2022, seeking bifurcation of Grayless's bad faith and IFCA claims from the breach of contract claim at trial. Dkt. 42. As the Court has determined Grayless's bad faith and IFCA claims fail, the Motion to Bifurcate (Dkt. 42) is denied as moot.

C. <u>Motion to Seal/Motion for Protective Order</u>

Grayless filed documents in support of her Response to the Partial Motion for Summary Judgment under seal in light of the Stipulated Protective Order and Allstate's designation of the documents as confidential. Dkt. 48. Allstate has filed a Motion for a Protective Order that appears to be a response to the Motion to Seal, requesting that the documents remain sealed. Dkt. 55. The Court has considered the two Motions, the relevant briefing, and the evidence. At this time, the Court grants the Motions (Dkts. 48, 55) as follows: the documents filed at Docket Entry 50 are to remain sealed. If either party wishes to unseal the documents at a later date, that party may file a motion requesting such relief.

**IV. Conclusion**

For the above stated reasons, the Partial Motion for Summary Judgment (Dkt. 38) is granted. Grayless's bad faith and IFCA claims are dismissed with prejudice. As the bad faith claims are dismissed, the Motion to Bifurcate (Dkt. 42) is denied as moot. The Motion to Seal

and the Motion for a Protective Order (Dkts. 48, 55) are granted as follows: the documents filed at Docket Entry 50 are to remain sealed at this time.

Dated this 27th day of July, 2022.

David W. Christel
United States Magistrate Judge

ORDER ON PARTIAL MOTION FOR SUMMARY
JUDGMENT AND MISCELLANEOUS MOTIONS
- 16